UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                    :
ILLINOIS UNION INSURANCE COMPANY,                                   :
                                                                    :
                                  Plaintiff,                        :
                                                                    :
                      -v-                                           :        21 Civ. 1170 (JPC) (KHP)
                                                                    :
BARUCH SINGER *et al.*,                                             :        OPINION AND ORDER
                                                                    :
                                  Defendants.                       :
                                                                    :
------------------------------------------------------------------ X

JOHN P. CRONAN, United States District Judge:

      This civil action for indemnification and other causes of action relating to a surety bond follows a familiar track.  In connection with a commercial lease, Illinois Union Insurance Company ("IUIC") issued a surety bond on behalf of the tenant and in favor of the landlord.  As is common in such transactions, the tenant and its affiliates agreed to indemnify IUIC against losses incurred by reason of IUIC's execution of the bond.  But after the tenant later defaulted on the lease and the landlord recovered its due under the bond, the tenant and its affiliates failed to make IUIC whole.  So IUIC filed this lawsuit, seeking to recover from them the amounts it paid to the landlord under the bond and associated expenses.

      IUIC now moves unopposed for summary judgment as to the indemnitors that remain in this case with respect to its claims for contractual indemnification, common law indemnification, subrogation, breach of a promissory note, and breach of contract.  For the following reasons, the Court grants IUIC's motion with respect to its contractual indemnification, promissory note, and other contract claims, but not as to its claims for common law indemnification and subrogation.

## I.  Background

### A.    Factual Background[1]

### 1.  The Indemnification Agreement and Surety Bond

In May 2019, Bond Downtown Phoenix LLC ("Downtown"), as tenant, entered into a lease agreement (the "Lease") with Collier Center, PT, LLC ("Collier"), the landlord.  Wills Decl. ¶ 8. That same month, IUIC entered into a General Agreement of Indemnity with Downtown and several of its affiliates.  *Id.* ¶ 4; *see* Wills Decl., Exh. 1 ("Indemnity Agreement").  The original counterparties to the Indemnity Agreement included Downtown, CoWorkrs, LLC dba Bond Collective ("Bond Collective"), CoWorkrs 23rd Street LLC ("CoWorkrs 23rd"), CoWorkrs 55 Broadway LLC ("CoWorkrs 55"), CoWorkrs 60 Broad Street LLC ("CoWorkrs 60"), CoWorkrs 3rd Street LLC ("CoWorkrs 3rd"), and Baruch Singer (collectively, the "Original Indemnitors"). Indemnity Agreement at 5-6.  In September 2022, after the initiation of this lawsuit, Shlomo Silber executed a Joinder Agreement, which amended the Indemnity Agreement to add him as an indemnitor "with the same force and effect as if Silber was originally named" as an indemnitor. Wills Decl., Exh. 11 ¶ 4.  The Original Indemnitors, minus CoWorkrs 55 and CoWorkrs 3rd which have since been dismissed, Dkt. 148, and Silber are altogether referred to herein as the "Indemnitors."

The Indemnity Agreement provides that it was "made and entered into by [the Original Indemnitors] for the benefit of [IUIC] . . . to issue or deliver any Bonds for, on behalf of or at the request of any of the [Original Indemnitors]."  Indemnity Agreement at 1.  The Indemnity

---

[1] The following facts are considered in the light most favorable to the nonmoving parties, and are taken from the declarations filed in support of IUIC's motion for summary judgment and the supporting exhibits attached to those declarations, Dkts. 151-3 ("Wills Decl."), 151-18 ("Morano Decl.").

Agreement further states that the Agreement was "for the purpose of indemnifying [IUIC] from any and all loss, cost and expense in connection with any and all surety bonds . . . previously or hereafter executed . . . for, on behalf of or at the request of[] any of the [Original Indemnitors]."

*Id.* Specifically, the parties principally agreed as follows under the Indemnity Agreement:

> The [Original Indemnitors] shall indemnify and save harmless [IUIC] from and against any and all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses, including without limitation, fees and disbursements of counsel incurred by [IUIC] in any action or proceeding between the [Original Indemnitors] and [IUIC], or between [IUIC] and any third party, which [IUIC] shall at any time incur by reason of its execution of any Bond or its payment of or its liability to pay any claim, irrespective of whether the claim is made against [IUIC] as a joint or several obligor and whether the [Original Indemnitors] are then liable to make such payment, and to place [IUIC] in funds to meet all of its liability under any Bond, promptly upon request and before [IUIC] may be required to make any payment thereunder; and copy of the claim, demand, voucher or other evidence of the payment by [IUIC] of any liability, claim, demand, loss, damage, expense, cost and attorney's fees, shall be prima facie evidence of the fact and amount of [the Original Indemnitors'] liability to [IUIC] under [the Indemnity Agreement]. Any demand upon [IUIC] by the Obligee shall be sufficient to conclude that a liability exists and the [Original Indemnitors] shall then place [IUIC] with sufficient funds in a form and amount deemed acceptable in [IUIC's] sole discretion, as collateral security to cover the liability.

*Id.* ¶ 2. Regarding payment of collateral security, the Indemnity Agreement further provides:

> The [Original Indemnitors] shall pay or cause to be paid to [IUIC] both the agreed premium and, upon written request by [IUIC] at any time, collateral security for its suretyship until the [Original Indemnitors] shall furnish to [IUIC] competent written evidence, satisfactory to [IUIC], of the termination of any past, present and future liability under any Bond.

*Id.* ¶ 1.

In June 2019, IUIC executed a surety bond in the amount of $973,087.50 on behalf of Downtown, as principal, for the benefit of Collier, as obligee, in connection with the Lease. Wills Decl. ¶ 9; *see* Wills Decl., Exh. 2 (the "Bond"). By its terms, the Bond obligated IUIC to "secure [Downtown's] obligations" under the Lease and provided that "[IUIC] shall promptly pay up to [the amount of the Bond] (but never more) to [Collier] upon receipt of [Collier's] written

declaration that [Downtown] is in default on the Lease, including the circumstances and amount of default." Bond at 1. Through a rider executed in February 2020, the obligee specified on the Bond was changed from Collier to USPO Phoenix, LLC ("USPO Phoenix"). Wills Decl. ¶ 10; *see* Wills Decl., Exh. 3 (Bond rider).

### 2. IUIC's Demand for Collateral and Downtown's Default on the Lease

Through a letter dated July 2, 2020, IUIC issued a demand to certain of the Original Indemnitors (*i.e.*, Downtown, Singer, Bond Collective, CoWorkrs 23rd, and CoWorkrs 60) directing them to: (1) pay IUIC a sum of $973,087.50, the amount of the Bond, as collateral security; and (2) indemnify and hold harmless IUIC in connection with IUIC's obligations under the Bond and its associated expenses. Wills Decl. ¶ 12; Wills Decl., Exh. 4 at 1 (July 2, 2020 letter). Those five Original Indemnitors, however, failed to comply with that demand. Wills Decl. ¶ 13.

Then, by a letter dated October 5, 2020, USPO Phoenix advised IUIC that Downtown failed to comply with certain of its obligations under the Lease, including its payment obligations, and asserted a claim for the full amount of the Bond. *Id.* ¶ 14; Wills Decl., Exh. 5 at 1-2 (October 5, 2020 letter). A few days later, IUIC forwarded that letter to Downtown, requesting Downtown to "provide, in writing, [Downtown's] position regarding the Claim as well as any and all documentation and correspondence concerning its position." Wills Decl., Exh. 6 at 1 (October 8, 2020 letter). IUIC's letter also stated that "IUIC will seek from [Downtown] and any and all of its co-indemnitors reimbursement for any and all losses, costs and/or expenses, including attorneys' fees, which IUIC has incurred and/or will incur in connection with this matter." *Id.* IUIC subsequently made a partial payment to USPO Phoenix for its claim under the Bond by way of a check bearing number NB50124434 for the sum of $169,082.69 (the "Initial Loss"). Wills Decl.

¶ 15; *see* Wills Decl., Exh. 7 (settlement agreement between IUIC and USPO Phoenix acknowledging the partial payment).

Unsatisfied with IUIC's partial payment, USPO Phoenix conveyed a demand that IUIC pay the remaining amount of the Bond in a letter dated November 9, 2020. Wills Decl. ¶ 16; Wills Decl., Exh. 8 (November 9, 2020 letter). Approximately two months later, IUIC sent a letter to the Original Indemnitors demanding that they indemnify IUIC for the Initial Loss plus associated expenses, as well as pay to IUIC the sum of $750,000 as collateral security. Wills Decl. ¶ 17; Wills Decl., Exh. 9 (January 11, 2021 letter).

After the Original Indemnitors failed to comply with IUIC's demand, Wills Decl. ¶ 18, IUIC and USPO Phoenix entered into a settlement agreement in January 2021 (the "Settlement Agreement") whereby IUIC agreed to pay USPO Phoenix a further sum of $750,000 under the Bond (the "Second Loss"), *id.* ¶ 19. IUIC made that payment through a check bearing number NB50130024. *Id.* To date, and despite IUIC's demands, "the [Original] Indemnitors have failed and/or refused to indemnify or otherwise fully reimburse IUIC in connection with the Loss and the costs and expenses, including attorneys' fees, incurred by IUIC in connection with its execution of the Bond." *Id.* ¶ 20.

### 3. The Parties' Additional Agreements

In September 2022, IUIC and the Indemnitors entered into additional agreements in the wake of IUIC's settlement with USPO Phoenix. Those agreements included a forbearance agreement between IUIC and the Original Indemnitors, Wills Decl., Exh. 10 (the "Indemnitors Forbearance Agreement"); a forbearance and repayment agreement between IUIC and Silber, Wills Decl., Exh. 12 (the "Silber Repayment Agreement"); and the Joinder Agreement that added Silber to the Indemnity Agreement as an indemnitor, Wills Decl., Exh. 11. At a high level, these agreements reiterated the Original Indemnitors' payment obligations under the Indemnity

Agreement but deferred those obligations subject to Silber's reimbursement to IUIC of its losses pursuant to a new payment schedule, while adding Silber as an indemnitor under the Indemnity Agreement with the same force and effect as if he had been included as such from the beginning. *See* Wills Decl. ¶¶ 21-34.

Specifically, Silber agreed to pay IUIC the following amounts: (1) $200,000 due immediately upon the execution of the Silber Repayment Agreement; (2) $200,000 on or before December 15, 2022; and (3) the balance of the amount owed to IUIC plus interest on or before January 13, 2023. Silber Repayment Agreement § 5. To that end, Silber executed a promissory note in favor of IUIC in the amount of $1,134,101.69. Wills Decl. ¶¶ 33-34; Wills Decl., Exh. 13 (the "Silber Promissory Note"). In consideration for Silber's promise to reimburse IUIC for the losses it sustained in connection with the Bond, IUIC deferred the Original Indemnitors' obligations under the Indemnity Agreement. *See* Indemnitors Forbearance Agreement § 2; Silber Repayment Agreement § 2.

The Indemnitors Forbearance Agreement and the Silber Repayment Agreement contained interlocking provisions regarding breach and default. Under the Silber Repayment Agreement, an "Event of Default" included Silber's failure to make any of the scheduled payments under that Agreement, if Silber failed to cure such default within five days. Silber Repayment Agreement § 13(b)(i). And under the Indemnitors Forbearance Agreement, an Event of Default included "[t]he occurrence of an Event of Default under the [Silber Repayment Agreement]." Indemnitors Forbearance Agreement § 12(a)(i). Under both Agreements, the effect of an uncured Event of Default was to allow IUIC to terminate the forbearance period, thereby entitling IUIC to exercise all of its rights under the Indemnity Agreement, the Silber Repayment Agreement, and the

Indemnitors Forbearance Agreement, among other agreements.  Silber Repayment Agreement §§ 2, 14; Indemnitors Forbearance Agreement §§ 2, 13.

### 4. The Indemnitors' Failure to Comply with Their Additional Contractual Obligations

Through a letter dated January 26, 2023, IUIC notified the Original Indemnitors and Silber of Events of Default under the Silber Repayment Agreement and the Indemnitors Forbearance Agreement.  Wills Decl. ¶ 35; Wills Decl., Exh. 14 (January 26, 2023 letter).  Specifically, IUIC alleged that Silber failed to make the second payment of $200,000 and the final payment of the balance of the amount owed, and demanded that the Original Indemnitors and Silber cure those Events of Default.  Wills Decl. ¶ 35; Wills Decl., Exh. 14 at 2.  The Indemnitors, however, failed to do so, and to date have failed to pay IUIC the full amount of the losses and associated expenses that IUIC incurred in connection with its execution of the Bond.  Wills Decl. ¶¶ 37-50.

### 5. IUIC's Claimed Losses

In connection with its execution of the Bond, IUIC suffered various forms of monetary losses.  As a result of its payments to resolve USPO Phoenix's claim under the Bond, IUIC incurred a total loss in the amount of $919,082.69 (the Initial Loss in the amount of $169,082.69, plus the Second Loss in the amount of $750,000.00).  *Id.* ¶ 52.  IUIC also claims that it incurred $391,490.51 in expenses, based on invoices received from its counsel at the law firm of McElroy, Deutsch, Mulvaney & Carpenter, LLP.  *Id.* ¶¶ 54-55.  Thus, IUIC asserts that it suffered gross damages in the amount of $1,310,573.20 in connection with its execution of the Bond, which, when offset by the amount of $575,000.00 that IUIC asserts that it has recouped, produces a remaining balance of no less than $735,573.20.  *Id.* ¶¶ 56-58.

**B.    Procedural History**

IUIC commenced this action against the Original Indemnitors on February 9, 2021.  Dkt. 1.[2]  Through a First Amended Complaint in the nature of a supplemental pleading filed on October 20, 2023, IUIC asserts causes of action for contractual indemnification under the Indemnity Agreement and the Joinder Agreement against the Original Indemnitors and Silber (First Cause of Action), Dkt. 124 ¶¶ 63-69; common law indemnification against Downtown (Second Cause of Action), *id.* ¶¶ 70-73; subrogation against Downtown (Third Cause of Action), *id.* ¶¶ 74-77; breach of the Indemnity Agreement and the Joinder Agreement against the Original Indemnitors and Silber (Fourth Cause of Action), *id.* ¶¶ 78-90; assignment against Downtown, Bond Collective, and various unknown entities (Fifth Cause of Action), *id.* ¶¶ 91-93; breach of the Silber Promissory Note against Silber (Sixth Cause of Action), *id.* at 16-17; breach of the Indemnitors Forbearance Agreement against the Original Indemnitors minus Singer (Seventh Cause of Action), *id.* at 17-19; and breach of the Silber Repayment Agreement against Silber (Eighth Cause of Action), *id.* at 19-20.[3]  IUIC's claims against two of the Original Indemnitors, CoWorkrs 55 and CoWorkrs 3rd,

---

[2] Under the Indemnity Agreement, the Indemnitors "agree that all actions or proceedings arising directly or indirectly from this Agreement shall be litigated only in courts having status within the State of New York, and consent[] to the personal jurisdiction and venue of any local, state or Federal Court located therein." Indemnity Agreement § 12.  The Silber Promissory Note, the Silber Repayment Agreement, and the Indemnitors Forbearance Agreement contain similar venue provisions.  Silber Promissory Note art. 8(b); Silber Repayment Agreement § 24; Indemnitors Forbearance Agreement § 23.  Each of these agreements also have choice-of-law provisions selecting the laws of the State of New York.  Indemnity Agreement § 12; Silber Promissory Note art. 8(a); Silber Repayment Agreement § 24; Indemnitors Forbearance Agreement § 23.

[3] On September 21, 2022, counsel for the Original Indemnitors advised the Court that the case had "functionally settled," and that "all material settlement documents" with executed signatures had been provided to IUIC's counsel.  Dkt. 93.  The Court subsequently entered an Order of Dismissal, without prejudice to the parties restoring the action within thirty days "in the event the settlement agreement is not completed and executed."  Dkt. 95.  IUIC then timely requested that this case be restored to the active calendar, explaining that "[a]lthough some of the

were dismissed on November 7, 2024, pursuant to a stipulation of dismissal signed by those defendants and IUIC.  Dkt. 148.

On December 31, 2024, IUIC moved for summary judgment against the Indemnitors (*i.e.*, the Original Indemnitors, minus the two dismissed parties, and Silber) on its First through Fourth and Sixth through Eighth Causes of Action, seeking judgment in the amount of $735,573.20 plus interest.  Dkt. 151; Dkt. 151-1 ("Motion").  The Indemnitors failed to file an opposition to IUIC's motion by the deadline set by the Court to do so.  Dkt. 152.

On May 15, 2025, the Court issued an Order directing IUIC to submit a supplemental letter brief addressing whether its Second and Third Causes of Action are duplicative of its First Cause of Action, whether IUIC would wish to assert its Second and Third Causes of Action in the event that it prevailed on its First Cause of Action, and whether it had presented sufficient evidence regarding the expenses portion of its damages request.  Dkt. 153.  The Court's Order also directed the Indemnitors to file a letter stating whether they intended to oppose IUIC's motion for summary judgment and warned the Indemnitors that the failure to do so would result in the Court treating the motion as unopposed.  *Id.*

IUIC filed its supplemental letter brief on May 30, 2025.  Dkt. 156 ("IUIC Supp. Br.").  Through that brief, IUIC states that while, in its view, the Second and Third Causes of Action are not duplicative, if the Court grants summary judgment on the First Cause of Action, IUIC would not wish to assert the Second and Third Causes of Action.  *Id.* at 1.  IUIC also argues that it provided sufficient information for the Court to award its requested amount of expenses, but, in

---

operative settlement documents have been executed, and defendants have partially performed thereunder, conditions of the settlement agreement have been breached and documents owed to Plaintiff have, regrettably, not yet been furnished."  Dkt. 96.  The Court then directed the Clerk of Court to reopen this case on October 31, 2022.  Dkt. 97.  Silber was subsequently named as a defendant in the First Amended Complaint.  Dkt. 124.

the alternative, seeks an opportunity to present additional evidence in support of that request. *Id.* at 1-2. The Indemnitors have not made a submission indicating whether they intend to oppose IUIC's motion.

## II. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court must "resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant "to present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). The non-movant "may not rely on conclusory allegations or unsubstantiated speculation," and "must offer some hard evidence showing that its version of the events is not wholly fanciful." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks omitted). The non-movant must present more than a mere "scintilla of evidence." *Anderson*, 477 U.S. at 252.

Although IUIC's motion is unopposed, the Court must apply these standards all the same. *CareandWear II, Inc. v. Nexcha L.L.C.* ("*CareandWear*"), 581 F. Supp. 3d 553, 556 (S.D.N.Y. 2022). In other words, the Court "may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of

fact remains for trial." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (internal quotation marks omitted).  In addition, the Court "must determine whether the legal theory of the motion is sound" and may not "automatically grant summary judgment on a claim simply because the summary judgment motion, or relevant part, is unopposed." *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014).

### III.  Discussion

IUIC moves for summary judgment on its causes of action for contractual indemnification, common law indemnification, subrogation, breach of a promissory note, and breach of contract. Motion at 3.  The Court considers each claim in turn.

### A.    Contractual Indemnification

IUIC principally moves for summary judgment on its claim for contractual indemnification against the Indemnitors relating to IUIC's role as surety in connection with the Bond.  Motion at 13-17.

A traditional suretyship, such as the one formed in this case, consists of a three-part relationship: a surety (here, IUIC) assumes liability for the default of another, known as the principal (Downtown in this case), for the benefit of a third party obligee (which in this case was ultimately USPO Phoenix).  *Chem. Bank v. Meltzer*, 712 N.E.2d 656, 660 (N.Y. 1999).  A suretyship is often coupled (as it was here) with an agreement by the principal and its affiliates to indemnify the surety against any losses that the surety might incur by reason of its assumption of liability for the principal's default, which shifts the risk of the principal defaulting on its obligations from the surety back to the principal—at least legally speaking.

In cases where the principal "has expressly agreed to indemnify the surety for losses arising from claims made on surety bonds, the indemnity agreement governs the relationship between the surety and the [principal]." *Gen. Accident Ins. Co. of Am. v. Merritt-Meridian Constr. Corp.*, 975

F. Supp. 511, 516 (S.D.N.Y. 1997) (citing *Int'l Fid. Ins. Co. v. Spadafina*, 596 N.Y.S.2d 453, 454 (2d Dep't 1993)).  Here, there is no dispute that IUIC and the Indemnitors entered into a valid indemnification agreement, the Indemnity Agreement, in connection with a suretyship involving IUIC as surety, Downtown as principal, and USPO Phoenix as obligee.  The Indemnity Agreement expressly requires the Indemnitors to "indemnify and save harmless [IUIC] from and against any and all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses . . . which [IUIC] shall at any time incur by reason of its execution of" any surety bonds in connection with the Indemnity Agreement.  Indemnity Agreement § 2.  That duty to indemnify IUIC exists "irrespective of . . . whether" the principal is in fact liable for any obligations secured by bonds covered under the Indemnity Agreement.  *Id.*  The Indemnity Agreement further specifies that a "copy of the claim, demand, voucher or other evidence of the payment by [IUIC] of any liability, claim, demand, loss, damage, expense, cost and attorney's fees, shall be prima facie evidence of the fact and amount of [the Indemnitors'] liability to [IUIC] under [the Indemnity Agreement]." *Id.*  And the Indemnity Agreement deems "[a]ny demand upon [IUIC] by the Obligee . . . sufficient to conclude that a liability exists."  *Id.*  Finally, the Indemnity Agreement makes clear that "[IUIC] shall have the sole and exclusive right to decide and determine whether any claim, liability, suit, or judgment made or brought against [IUIC] on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and [IUIC's] decision thereon shall be final and binding upon the [Indemnitors]."  *Id.* § 6.

It is well-established that these types of "[i]ndemnity agreements . . . are valid and enforceable under New York law."  *Gen. Accident Ins. Co. of Am.*, 975 F. Supp. at 515-16; *see U.S. Fid. & Guar. Co. v. Sequip Participacoes, S.A.*, No. 98 Civ. 3099 (THK), 2003 WL 22743430, at *5 (S.D.N.Y. Nov. 19, 2003) ("New York law has long recognized the validity of indemnity

agreements.").  And "New York courts have consistently held" that provisions similar to those contained in the Indemnity Agreement "mean that 'payments made by sureties under such provisions are scrutinized only for good faith and reasonableness as to the amount paid,' and that a plaintiff 'states a prima facie case under the contract by submitting proper documentation of payment of a settlement as well as the fees and costs incurred in making a settlement.'"  *Star Ins. Co. v. A&J Constr. of New York, Inc.*, No. 15 Civ. 8798 (CS), 2017 WL 6568061, at *5 (S.D.N.Y. Dec. 22, 2017) (quoting *Spadafina*, 596 N.Y.S.2d at 454-55) (alterations adopted).  Thus, under indemnification agreements like the one at issue in this case, "the surety is entitled to indemnification upon proof of payment, unless payment was made in bad faith or was unreasonable in amount, and this rule applies regardless of whether the principal was actually in default or liable under its contract with the obligee." *Frontier Ins. Co. v. Renewal Arts Contracting Corp.*, 784 N.Y.S.2d 698, 700 (3d Dep't 2004).

Under this approach, to obtain summary judgment "a plaintiff surety satisfies any 'initial burden' with proof of payment," at which point "the burden then shifts to [the defendants] to show bad faith" or unreasonableness.  *Safeco Ins. Co. of Am. v. M.E.S., Inc.* ("*Safeco*"), No. 09 Civ. 3312 (PKC), 2017 WL 1194730, at *12 (E.D.N.Y. Mar. 30, 2017).  Here, IUIC has shown a *prima facie* entitlement to indemnification by offering proof—in the form of the Wills Declaration, a copy of the Settlement Agreement, and other agreements between the parties memorializing IUIC's expenditures—of the losses it sustained by reason of its execution of the Bond and by providing a copy of the Indemnity Agreement demonstrating its right to reimbursement.  *See Star Ins. Co.*, 2017 WL 6568061, at *5.  The Indemnitors have not submitted any evidence suggesting that IUIC acted in bad faith (which requires a showing that the plaintiff engaged in fraud or collusion) or that the losses IUIC incurred in connection with the Bond are unreasonable, and the record does not

otherwise disclose any evidence of bad faith or unreasonableness. IUIC is therefore entitled to summary judgment on its First Cause of Action. *See Colonial Sur. Co. v. A&R Cap. Assocs.*, 420 F. Supp. 3d 38, 44 (E.D.N.Y. 2017); *Peerless Ins. Co. v. Talia Constr. Co.*, 708 N.Y.S.2d 223, 224 (4th Dep't 2000).

**B.**     **Common Law Indemnification and Subrogation**

In its motion, IUIC also sought summary judgment against Downtown on its causes of action for common law indemnification and subrogation.  Motion at 17-19.  In response to the Court's May 15, 2025 Order, however, IUIC clarified that it "does not wish to assert [these claims]" in the event that it prevails on its claim for contractual indemnity against the Indemnitors. IUIC Supp. Br. at 3.  Because the Court awards summary judgment in favor of IUIC on the First Cause of Action as against the Indemnitors for contractual indemnification, *see supra* III.A, the Court denies IUIC's motion as to the Second and Third Causes of Action.

**C.**     **Silber Promissory Note**

IUIC also moves for summary judgment on its claim against Silber in the Sixth Cause of Action for payment under the Silber Promissory Note.  Motion at 19-20.  Under New York law, "[t]o establish prima facie entitlement to judgment as a matter of law with respect to a promissory note, a plaintiff must show the existence of a promissory note, executed by the defendant, containing an unequivocal and unconditional obligation to repay, and the failure by the defendant to pay in accordance with the note's terms[.]"  *Green Tree Servicing LLC v. Christodoulakis*, 136 F. Supp. 3d 415, 426 (E.D.N.Y. 2015) (quoting *Rodrigues v. Samaras*, 987 N.Y.S.2d 78, 80 (2d Dep't 2014)); *see also Silvertip Cap. (IG) LLC v. Baraka Inv. Ltd.*, No. 22 Civ. 10746 (MKV), 2025 WL 871642, at *3 (S.D.N.Y. Mar. 20, 2025) ("To establish a *prima facie* case for recovery, a plaintiff must simply show proof of a note and failure to make payment." (internal quotation marks omitted)).  "When a note holder has established a *prima facie* claim, the burden shifts to the

defendant to prove the existence of a triable issue of fact in the form of a bona fide defense against the note." *Camofi Master LDC v. Coll. P'ship, Inc.*, 452 F. Supp. 2d 462, 470 (S.D.N.Y. 2006) (internal quotation marks omitted); *see Rodrigues*, 987 N.Y.S.2d at 80.

In this case, IUIC presented a copy of the Silber Promissory Note signed by Silber, which states that Silber "unconditionally PROMISES AND AGREES TO PAY to the order of [IUIC]" the principal sum of $1,134,101.69 plus interest. Silber Promissory Note at 1. The payment terms of the Silber Promissory Note provide as follows:

> [Silber] agrees to pay the principal sum of this Note and interest on the unpaid principal sum of this Note and all other amounts due under the [Silber Repayment Agreement] and the Indemnity Agreement, and Agreement Documents referred to in the [Silber Repayment Agreement] ("Agreement Documents"), at the rates and at the times specified in the [Silber Repayment Agreement], and the outstanding balance of the principal sum of this Note and all accrued and unpaid interest thereon and all other Obligations and amounts due under the [Silber Repayment Agreement] and the other Agreement Documents, including, without limitation, interest at the rate set for the in the [Silber Repayment Agreement], shall be due and payable on the Maturity Date.

*Id.* art. 1. Regarding default, the Silber Promissory Note further provides that "[t]he Obligations shall without notice become immediately due and payable at the option of [IUIC] if any payment required in this Note is not paid on or prior to the date when due or if not paid on the Maturity Date or on the happening of any other Event of Default." *Id.* art. 2.

As noted, the Silber Repayment Agreement required Silber to reimburse IUIC for the losses it sustained in settling USPO Phoenix's claim under the Bond in three installments: (1) $200,000 due immediately upon the execution of the Silber Repayment Agreement; (2) $200,000 on or before December 15, 2022; and (3) the balance of the amount owed to IUIC plus interest on or before January 13, 2023. Silber Repayment Agreement § 5. According to the Wills Declaration, as of January 26, 2023, Silber had failed to make the second and third of these payments. Wills Decl. ¶ 35; *see* Wills Decl., Exh. 14 (January 26, 2023 letter). And despite receiving written

notification of his default under the Silber Promissory Note from IUIC, Silber still has not made the required payments.  Wills Decl. ¶¶ 37-44.

These undisputed facts suffice to establish IUIC's *prima facie* entitlement to payment under the Silber Promissory Note: the Note exists, was signed by Silber, and reflects an unconditional promise by Silber to pay IUIC the principal sum of $1,134,101.69 plus interest, and Silber failed to do so in accordance with the Note's repayment terms, which incorporated the Silber Repayment Agreement's payment schedule.  Silber has not presented any evidence to place IUIC's *prima facie* case in genuine dispute, nor has Silber presented any evidence supporting a *bona fide* defense to enforcement of the Silber Promissory Note.  And the record does not otherwise reveal any factual dispute regarding IUIC's *prima facie* case or the existence of a *bona fide* defense. Accordingly, IUIC is entitled to summary judgment on its Sixth Cause of Action.

**D.      Remaining Contract Claims**

The remaining causes of action that IUIC moves for summary judgment on are for breach of contract as to the Indemnity Agreement, the Indemnitors Forbearance Agreement, and the Silber Repayment Agreement.  "To establish a contract breach under New York law, a plaintiff must show: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *CareandWear*, 581 F. Supp. 3d at 556 (internal quotation marks omitted).  Because the undisputed facts demonstrate that these elements are satisfied with respect to each contract underlying IUIC's claims for breach, the Court grants IUIC's motion for summary judgment as to its Fourth, Seventh, and Eighth Causes of Action.

**1.  Indemnity Agreement**

Starting with the Fourth Cause of Action, IUIC is entitled to summary judgment on its claim for breach of the Indemnity Agreement's provisions concerning collateral security.

There is no dispute that IUIC and the Indemnitors entered into the Indemnity Agreement, a valid and enforceable indemnification contract. *See* Wills Decl. ¶¶ 4-7, 25-28; Indemnity Agreement at 5-7; Joinder Agreement ¶ 4; *see also* Silber Repayment Agreement § 3. Nor is there any dispute that IUIC adequately performed its obligations under and related to the Indemnity Agreement in issuing the Bond on the Indemnitors' behalf, settling USPO Phoenix's claim under the Bond, and seeking collateral security from the Indemnitors through proper written requests.

There is also no dispute that the Indemnitors breached the Indemnity Agreement's collateral security provision, which states in relevant part:

> The [Indemnitors] shall pay or cause to be paid to [IUIC] both the agreed premium and, upon written request by [IUIC] at any time, collateral security for its suretyship until the [Indemnitors] shall furnish to [IUIC] competent written evidence, satisfactory to [IUIC], of the termination of any past, present and future liability under any Bond.

Indemnity Agreement § 1. To that end, IUIC has presented uncontroverted evidence that, through a letter dated July 2, 2020, it provided a written request to the Original Indemnitors seeking collateral security relating to the Bond in the total amount of $973,087.50. Wills Decl. ¶ 12; Wills Decl., Exh. 4 at 1 (July 2, 2020 letter). IUIC also presented undisputed evidence that it made a second written request for collateral security, this time in the total amount of $750,000, by a letter dated January 11, 2021. Wills Decl. ¶ 17; Wills Decl., Exh. 9 (January 11, 2021 letter). Despite their obligation under the Indemnity Agreement to comply with those written requests, the Indemnitors failed to provide the requested amounts of collateral security to IUIC. Wills Decl. ¶¶ 13, 18. The Indemnitors' failure to secure IUIC as they were required to do under the Indemnity Agreement, in turn, caused IUIC to incur losses in resolving USPO Phoenix's claim under the Bond and in seeking reimbursement from the Indemnitors, including through this litigation. *See id.* ¶¶ 15, 19.

In sum, the undisputed record establishes that IUIC and the Indemnitors entered into the Indemnity Agreement, that IUIC performed under the Agreement, and that the Indemnitors breached the Agreement's collateral security provision, resulting in IUIC's claimed damages. Accordingly, IUIC is entitled to summary judgment on its Fourth Cause of Action for breach of the Indemnitors' contractual duty under the Indemnity Agreement to provide collateral security.

### 2. Indemnitors Forbearance Agreement and Silber Repayment Agreement

With respect to the Seventh and Eighth Causes of Action, IUIC is also entitled to summary judgment on its claims for breach of the Indemnitors Forbearance Agreement and the Silber Repayment Agreement.

There is no dispute that both of these agreements are valid, enforceable contracts entered into respectively between IUIC and the Original Indemnitors and between IUIC and Silber. *See* Wills Decl. ¶¶ 21-24, 29-32; Indemnitors Forbearance Agreement at 30-37; Silber Repayment Agreement at 31-32. Likewise, there is no dispute that IUIC performed its obligations under both agreements in agreeing to forbear from exercising its rights and remedies under the Indemnity Agreement pending Silber's satisfaction of the payment schedule set forth in the Silber Repayment Agreement. Finally, as noted the undisputed record establishes that Silber breached the Silber Repayment Agreement by failing to make the second and third payments called for under its repayment schedule. Wills Decl. ¶¶ 35-38; Wills Decl., Exh. 14 (January 26, 2023 letter). That failure, in turn, constituted an Event of Default under both the Indemnitors Forbearance Agreement and the Silber Repayment Agreement, triggering the Indemnitors' (including Silber's) obligation under the Indemnity Agreement to reimburse IUIC for the losses it sustained by reason of its execution of the Bond. In failing to reimburse IUIC for that full amount, there is no dispute of material fact that the Original Indemnitors (minus Singer, who is not named in the Seventh Cause of Action, and CoWorkrs 55 and CoWorkrs 3rd, which have been dismissed from this case)

breached the Indemnitors Forbearance Agreement and that Silber breached the Silber Repayment Agreement, resulting in monetary damages to IUIC. Wills Decl. ¶¶ 37-50.

Accordingly, IUIC is entitled to summary judgment on its Seventh and Eighth Causes of Action.

**E.      Damages**

As noted, IUIC seeks judgment in the amount of no less than $735,573.20. IUIC arrives at this figure by subtracting the $575,000.00 in payments that it has already recovered from the gross amount that it lost in connection with its execution of the Bond, which IUIC calculates as $1,310,573.20. That amount, in turn, consists of the Initial Loss in the amount of $169,082.69, the Second Loss in the amount of $750,000.00, and $391,490.51 in expenses. IUIC also "requests permission to supply the Court with current interest figures ten days after any order granting the Motion." Morano Decl. ¶ 4 n.1.

The majority of IUIC's claimed damages are well-supported. As to the $919,082.69 in direct losses that IUIC incurred in settling USPO Phoenix's claim under the Bond (*i.e.*, the Initial Loss plus the Second Loss), IUIC submits a copy of the Settlement Agreement between it and USPO Phoenix. *See* Wills Decl., Exh. 7. The Wills Declaration also states that IUIC paid the full amount of that settlement to USPO Phoenix through two checks bearing the numbers NB50124434 and NB50130024. Wills Decl. ¶¶ 15, 19.

IUIC, however, also requests an award of $391,490.51 in "expenses," which appears to represent the amount of attorneys' fees and expenses incurred by its counsel in connection with IUIC's execution of the Bond. *Id.* ¶ 55. To that end, the Indemnity Agreement entitles IUIC to recover "any and all . . . expense, cost, attorney's fees and expenses, including without limitation, fees and disbursements of counsel incurred by [IUIC] in any action or proceeding between [the Indemnitors] and [IUIC]" occurring by reason of IUIC's execution of the Bond. Indemnity

Agreement § 2.  Although this provision, on its face, states that IUIC may recover "any and all" attorneys' fees and expenses, courts applying New York law have generally interpreted similarly broad fee-shifting language to contain an implicit reasonableness limitation, even in the indemnification context.  *See, e.g.*, *Star Ins. Co.*, 2017 WL 6568061, at *1, *7 (referring the matter for an inquest regarding the reasonableness of the requested expenses and legal fees where the language of the indemnification agreement provided for the recovery of "ANY AND ALL LOSS WHATSOEVER, including [but] not limited to all demands, claims, liabilities, damages, costs, charges, fees, expenses, suits, orders, judgments, adjudications, and any other Losses of whatsoever nature or kind"); *Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC*, 549 F. Supp. 2d 274, 278 (E.D.N.Y. 2008) (collecting cases).  And even when an indemnitor has failed to present sufficient evidence at summary judgment to rebut the surety's *prima facie* entitlement to indemnification, courts "often . . . leave issues regarding the reasonableness of expenses for a later evidentiary hearing" or other form of inquest.  *Safeco*, 2017 WL 1194730, at *24.

Given the lack of specific information regarding the propriety of the expenses being sought, the Court finds that approach prudent here.  In making its request for expenses, IUIC relies largely on the Wills Declaration, which provides a table of invoices received from IUIC's counsel, including the identification number, date, and amount of each invoice.  Wills Decl. ¶ 55.  According to the Wills Declaration, those invoices reflect "costs and expenses, including attorneys' fees," incurred "[i]n connection with the matters described herein, including this litigation."  *Id.* ¶ 54.  IUIC also relies on the Morano Declaration, which states that "IUIC, for the period of June 25, 2020, through and including October 31, 2024, has incurred costs and expenses, including attorneys' fees, in the amount of no less than $391,490.51."  Morano Decl. ¶ 17.  Those declarations, however, provide little by way of specificity regarding the nature of each invoice that

would connect it to IUIC's execution of the Bond or the reasonableness of the amounts reflected in those invoices. For instance, IUIC has not provided descriptions of what services or expenses each invoice represents, how those expenses are connected to IUIC's execution of the Bond, timesheets identifying the attorneys who billed time for each invoice and specifying the number of hours spent on each task, or information as to each attorney's level of experience and hourly rate. Without such information, the Court cannot determine what, exactly, each invoice represents or whether the amount of each invoice is reasonable.

Accordingly, the Court will refer the portion of IUIC's damages request that relates to its claim for attorneys' fees and expenses to the designated magistrate judge, the Honorable Katharine H. Parker, for an inquest. The Court will enter judgment following a determination as to the appropriate amount of those fees and expenses.

## IV. Conclusion

For these reasons, IUIC's motion for summary judgment is granted as to its First, Fourth, Sixth, Seventh, and Eighth Causes of Action, and denied as to its Second and Third Causes of Action. The Court will enter a separate order referring this matter to the Honorable Katharine H. Parker to consider the appropriate amount of fees and expenses that IUIC incurred in connection with its execution of the Bond, and will enter judgment after the amount of those fees and expenses has been determined. IUIC shall present current interest figures within two weeks following the determination as to the reasonableness of its requested fees and expenses.

On or before July 14, 2025, IUIC shall also file a letter advising the Court whether it intends to proceed with the Fifth Cause of Action and, if so, propose next steps regarding that claim.  The Clerk of Court is respectfully directed to close Docket Number 151.

      SO ORDERED.

Dated: June 30, 2025
      New York, New York

                                  JOHN P. CRONAN
                            United States District Judge